**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------x

LONDON LUXURY LLC,                          :
                                            :
              Plaintiff,            :
                                            :       **Case No. 22-cv-00599 (CS)**
        v.                :
                                            :
WALMART INC.,                               :
                                            :
              Defendant.           :

----------------------------------------------------x

WALMART INC.,                               :
                                            :
           Counterclaim-Plaintiff,   :
                                            :
        v.                :
                                            :
LONDON LUXURY LLC,                          :
                                            :
           Counterclaim-Defendant. :

----------------------------------------------------x

## DEFENDANT WALMART INC.'S ANSWER
## AND COUNTERCLAIMS WITH JURY DEMAND

Defendant, Walmart Inc. ("Walmart"), by and through its undersigned attorneys and for

its answer to the allegations in the Complaint dated January 5, 2022 (the "Complaint") filed by

Plaintiff London Luxury LLC ("Plaintiff"), states and alleges as follows:

1.      Paragraph 1 contains statements to which no responsive pleading is required.  To

the extent a response is required, Walmart states the documents Plaintiff identifies as the

"February Commitment Letter," "April Commitment Letter," and "June Commitment Letter" (as

defined in Plaintiff's Complaint)[1] speak for themselves and denies any allegations in Paragraph 1

---

[1] Walmart states that it uses Plaintiff's defined terms "February Commitment Letter,"
"April Commitment Letter," "June Commitment Letter," and "Amended Commitment Letter"
solely for the purpose of responding to Plaintiff's allegations employing those terms and as those

to the extent they misstate or misconstrue the same. Walmart further denies the "Amended Commitment Letter" (as defined in Plaintiff's Complaint) obligates Walmart to purchase any minimum quantity of nitrile gloves from Plaintiff. Walmart denies the remaining allegations in Paragraph 1 of the Complaint, including footnotes 1, 2, and 3.

2. Walmart admits that, in or around summer of 2020, it engaged in discussions with London Luxury concerning potential purchases of nitrile gloves, including product amounts. Walmart also admits that, on or about July 21, 2020, it sent a letter to Plaintiff in response to a proposal from Plaintiff dated July 21, 2020 in which Plaintiff proposed to provide nitrile gloves "on a non-exclusive basis" and to complete "on-time [purchase orders] by the required cargo ready dates outlined in each issued [purchase order]." Walmart further states the February Commitment Letter speaks for itself and denies any allegations in Paragraph 2 to the extent they misstate or misconstrue the same. Walmart denies it is obligated to purchase any minimum quantity of nitrile gloves from Plaintiff. Walmart denies the remaining allegations in Paragraph 2 of the Complaint.

3. Walmart states the February Commitment Letter speaks for itself and denies any allegations in Paragraph 3 to the extent they misstate or misconstrue the same. Walmart admits that the February Commitment Letter states that it was "contingent upon" Plaintiff "meeting the . . . requirements described in th[e] letter as well as any and all compliance and regulatory requirements associated with the Supplier Agreement." Walmart denies the remaining allegations in Paragraph 3 of the Complaint.

---

terms are defined by Plaintiff. Walmart similarly uses other terms defined by Plaintiff solely for purposes of responding to allegations. Walmart generally denies Plaintiff's descriptions and characterizations of documents in its defined terms, as is more fully set forth in this Answer.

4.      Walmart admits it sent the April Commitment Letter to Plaintiff on or about April 28, 2021.  Walmart denies the April Commitment Letter was "executed" by Plaintiff. Walmart further states the April Commitment Letter speaks for itself and denies any allegations in Paragraph 4 to the extent they misstate or misconstrue the same.  Walmart lacks knowledge or information sufficient to form a belief concerning the authenticity of the June Commitment Letter.  Walmart states the June Commitment Letter speaks for itself and denies any allegations in Paragraph 4 to the extent they misstate or misconstrue the same. Walmart denies the remaining allegations in Paragraph 4 of the Complaint.

5.      Walmart denies the "non-cancellable and irrevocable commitment" to purchase nitrile gloves from Plaintiff, as alleged.  Walmart admits that, after months of delays by Plaintiff in the delivery of nitrile gloves, Plaintiff began delivering gloves to Walmart under a Supplier Agreement dated March 31, 2021 (the "March 2021 Supplier Agreement") based on later purchase orders issued by Walmart.  Walmart lacks knowledge or information sufficient to form a belief as to the efforts undertaken by Plaintiff to source nitrile gloves.  The remainder of Paragraph 5 contains statements to which no responsive pleading is required.  To the extent a response is required, Walmart denies the remaining allegations in Paragraph 5 of the Complaint.

6.      Walmart admits that there were delays in London Luxury's deliveries and that, in November 2021, Walmart received reports showing that nitrile gloves allegedly sourced from Plaintiff's Careglove and Mercator facilities failed relevant testing standards.  Walmart disputes Plaintiff's contentions regarding the Amended Commitment Letter, and Walmart denies the remaining allegations in Paragraph 6 of the Complaint.

7.     Walmart admits it has directed Plaintiff to stop deliveries of nitrile gloves, denies knowledge or information sufficient to form a belief as to efforts Plaintiff has undertaken, and denies the remaining allegations in Paragraph 7 of the Complaint.

8.     Walmart does not contest the exercise of jurisdiction over Walmart in this matter.

9.     Walmart denies venue is proper in the Southern District of New York or in New York State court (where Plaintiff originally filed this action).  Agreements between Walmart and Plaintiff contain mandatory forum selection clauses providing for exclusive jurisdiction and venue in Arkansas courts for any dispute related to the agreements, including the March 2021 Supplier Agreement.

10.    Walmart admits, on information and belief, Plaintiff is a limited liability company organized under the laws of the State of New York with its principal place of business in New Rochelle, New York.

11.    Walmart admits it is a corporation organized under the laws of the State of Delaware with its principal place of business in Bentonville, Arkansas.  Walmart further states the statement it has a "significant presence" in the State of New York is not a statement to which a responsive pleading is required.  With respect to the remaining statements in Paragraph 11, Walmart lacks knowledge or information sufficient to form a belief as to the information to which Plaintiff refers and therefore denies the same

12.    Paragraph 12 contains statements to which no responsive pleading is required.  To the extent a response is required, Walmart lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 12 of the Complaint and therefore denies the same.

13.     Paragraph 13 contains statements to which no responsive pleading is required.  To the extent a response is required, Walmart lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 13 of the Complaint and therefore denies the same.

14.     Paragraph 14 contains statements to which no responsive pleading is required.  To the extent a response is required, Walmart lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 14 of the Complaint and therefore denies the same.

15.     Walmart admits that in or around summer of 2020 it engaged in discussions with Plaintiff concerning potential purchases of nitrile gloves.  Walmart lacks knowledge or information sufficient to form a belief concerning the remaining allegations in Paragraph 15 of the Complaint and therefore denies the same.

16.     Walmart admits that during its preliminary discussions with Plaintiff concerning the purchase of nitrile gloves, it did not communicate or commit to a minimum purchase quantity to Plaintiff.  Walmart lacks knowledge or information sufficient to form a belief concerning the remaining allegations in Paragraph 16 of the Complaint and therefore denies the same.

17.     Walmart states the August 2020 Supplier Agreements (as defined in Plaintiff's Complaint) speak for themselves and denies the allegations in Paragraph 17 to the extent they misstate or misconstrue the same.  Walmart admits that Plaintiff entered into the August 2020 Supplier Agreements.  Walmart lacks knowledge or information sufficient to form a belief concerning the remaining allegations in Paragraph 17 of the Complaint and therefore denies the same.

18.     Walmart admits that it generally requires suppliers of merchandise to Walmart to enter agreements.  Walmart denies the remaining allegations in Paragraph 18 of the Complaint.

19.     Walmart states the August 2020 Supplier Agreements speak for themselves and denies the allegations in Paragraph 19 of the Complaint to the extent they misstate or misconstrue the same.

20.     Walmart states the August 2020 Supplier Agreements speak for themselves and denies the allegations in Paragraph 20 of the Complaint to the extent they misstate or misconstrue the same.

21.     Walmart states the August 2020 Supplier Agreements speak for themselves and denies the allegations in Paragraph 21 of the Complaint to the extent they misstate or misconstrue the same.

22.     Walmart states the August 2020 Supplier Agreements speak for themselves and denies the allegations in Paragraph 22 of the Complaint to the extent they misstate or misconstrue the same.

23.     Walmart states the August 2020 Supplier Agreements speak for themselves and denies the allegations in Paragraph 23 of the Complaint to the extent they misstate or misconstrue the same.

24.     Walmart states the August 2020 Supplier Agreements speak for themselves and denies the allegations in Paragraph 24 of the Complaint to the extent they misstate or misconstrue the same.

25.     Walmart states the August 2020 Supplier Agreements speak for themselves and denies the allegations in Paragraph 25 of the Complaint to the extent they misstate or misconstrue the same.

26.     Walmart admits that, based on Plaintiff's representations concerning its ability to produce and ship nitrile gloves to Walmart, it communicated with Plaintiff about potential purchases of nitrile gloves in different amounts.  Walmart denies the remaining allegations in Paragraph 26 of the Complaint.

27.     Walmart lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 27 of the Complaint and therefore denies the same.

28.     Walmart lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 28 of the Complaint and therefore denies the same.

29.     Walmart states the February Commitment Letter speaks for itself and denies the allegations in Paragraph 29 to the extent they misstate or misconstrue the same.  Walmart denies the remaining allegations in Paragraph 29 of the Complaint.

30.     Walmart lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 30 of the Complaint and therefore denies the same.

31.     Walmart lacks knowledge or information sufficient to form a belief concerning the allegations in Paragraph 31 of the Complaint and therefore denies the same.

32.     Walmart states the February Commitment Letter speaks for itself and denies the allegations in Paragraph 32 to the extent they misstate or misconstrue the same.  Walmart denies the remaining allegations in Paragraph 32 of the Complaint.

33.     Walmart states the February Commitment Letter speaks for itself and denies the allegations in Paragraph 33 of the Complaint to the extent they misstate or misconstrue the same.

34.     Walmart states the February Commitment Letter speaks for itself and denies the allegations in Paragraph 34 of the Complaint to the extent they misstate or misconstrue the same.

35.     Walmart states the February Commitment Letter speaks for itself and denies the allegations in Paragraph 35 of the Complaint to the extent they misstate or misconstrue the same. Paragraph 35 contains statements to which no responsive pleading is required.  To the extent a response is required, Walmart denies the allegations in Paragraph 35 of the Complaint.

36.     Walmart states the February Commitment Letter speaks for itself and denies the allegations in Paragraph 36 of the Complaint to the extent they misstate or misconstrue the same.

37.     Walmart states the February Commitment Letter and the document entitled "WMUS Medical Glove Protocol V1 MD" speak for themselves and denies the allegations in Paragraph 37 of the Complaint to the extent they misstate or misconstrue the same.

38.     Walmart states the February Commitment Letter and protocols speak for themselves and denies the allegations in Paragraph 38 to the extent they misstate or misconstrue the same.  Paragraph 38 contains statements to which no responsive pleading is required.  To the extent a response is required, Walmart denies the allegations in Paragraph 38 of the Complaint.

39.     Walmart admits that, after the date of the February Commitment Letter, Walmart had discussions with London Luxury and arranged for the purchase of nitrile gloves from London Luxury to be through a direct import supplier program and London Luxury was registered in Walmart's Retail Link system. Walmart denies the remaining allegations in Paragraph 39 of the Complaint of the Complaint.

40.     Walmart states the document Plaintiff identifies as the March 2021 D40 Supplier Agreement speaks for itself and denies the allegations in Paragraph 40 to the extent they misstate or misconstrue the same.  Walmart denies the remaining allegations in Paragraph 40 of the Complaint.

41.     Walmart denies the allegations in Paragraph 41 of the Complaint.

42.     Walmart denies the allegations in Paragraph 42 of the Complaint.

43.     Walmart denies the allegations in Paragraph 43 of the Complaint.

44.     Walmart denies the allegations in Paragraph 44 of the Complaint.

45.     Walmart states the March 2021 D40 Supplier Agreement speaks for itself and denies the remaining allegations in Paragraph 45 of the Complaint.

46.     Walmart denies the allegations in Paragraph 46 of the Complaint.

47.     Walmart states the April Commitment Letter speaks for itself and denies the allegations in Paragraph 47 to the extent they misstate or misconstrue the same.  Walmart denies the remaining allegations in Paragraph 47 of the Complaint.

48.     Walmart lacks sufficient knowledge or information to form a belief concerning the allegations in Paragraph 48 of the Complaint and therefore denies the same.

49.     Walmart denies the allegations in Paragraph 49 of the Complaint.

50.     Walmart lacks sufficient knowledge or information to form a belief concerning the allegations in Paragraph 50 of the Complaint and therefore denies the same.

51.     Walmart denies the allegations in Paragraph 51 of the Complaint.

52.     Walmart denies the allegations in Paragraph 52 of the Complaint.

53.     Walmart denies the allegations in Paragraph 53 of the Complaint.

54.     Walmart lacks sufficient knowledge or information to form a belief concerning the allegations in Paragraph 54 of the Complaint and therefore denies the same.

55.     Walmart lacks sufficient knowledge or information to form a belief concerning the allegations in Paragraph 55 of the Complaint and therefore denies the same.

56.     Walmart lacks sufficient knowledge or information to form a belief concerning the allegations in Paragraph 56 of the Complaint and therefore denies the same.

57.     Walmart lacks sufficient knowledge or information to form a belief concerning the allegations in Paragraph 57 of the Complaint and therefore denies the same.

58.     Walmart denies the allegations in Paragraph 58 of the Complaint.

59.     Walmart states the email from Garrett Small referred to in Paragraph 59 speaks for itself and denies any allegations to the extent they misstate or misconstrue the same. Walmart admits that, on February 17, 2021, it entered into a contract with an Arkansas-based company related to the supply of nitrile gloves. Walmart denies the remaining allegations in Paragraph 59 of the Complaint.

60.     Walmart denies the allegations in Paragraph 60 of the Complaint.

61.     Walmart admits it raised questions in late October 2021 and at other times about gloves sourced by London Luxury. Walmart denies the remaining allegations in Paragraph 61 of the Complaint.

62.     Walmart states the letter from "Mercator's chief executive officer" referred to in Paragraph 62 speaks for itself and Walmart denies any allegations in Paragraph 62 to the extent they misstate or misconstrue the same. Walmart admits that as part of its procedures for direct import suppliers, factories such as Mercator are required to undergo audits pursuant to Walmart's Standards for suppliers, including a Supply Chain Security Audit. Walmart denies the remaining allegations in Paragraph 62 of the Complaint.

63.     Walmart admits that it has complained about London Luxury's failure to timely make deliveries of gloves and, to the extent Plaintiff refers to a written communication, Walmart denies the allegations in Paragraph 63 to the extent they misstate or misconstrue the same. Walmart denies the remaining allegations in Paragraph 63 of the Complaint.

64.     Walmart admits that it was aware of delays related to London Luxury's failure to timely make deliveries of gloves and, to the extent Plaintiff refers to a written communication, Walmart denies the allegations in Paragraph 64 to the extent they misstate or misconstrue the same.  Walmart lacks sufficient knowledge or information to form a belief concerning the remaining allegations in Paragraph 64 of the Complaint and therefore denies the same.

65.     Walmart admits that it has raised issues with the quality testing on the nitrile gloves.  Walmart denies the remaining allegations in Paragraph 65 of the Complaint.

66.     Walmart states the February Commitment Letter speaks for itself and denies the allegations in Paragraph 66 to the extent they misstate or misconstrue the same.  Walmart denies the remaining allegations in Paragraph 66 of the Complaint.

67.     Walmart lacks sufficient knowledge or information to form a belief concerning the allegations in Paragraph 67 of the Complaint and therefore denies the same.

68.     Walmart lacks sufficient knowledge or information to form a belief concerning the allegations in Paragraph 68 of the Complaint and therefore denies the same.

69.     Walmart lacks sufficient knowledge or information to form a belief concerning the allegations in Paragraph 69 of the Complaint and therefore denies the same.

70.     Walmart lacks sufficient knowledge or information to form a belief concerning the allegations in Paragraph 70 of the Complaint and therefore denies the same.

71.     Walmart lacks sufficient knowledge or information to form a belief concerning the allegations in Paragraph 71 of the Complaint and therefore denies the same.

72.     Walmart lacks sufficient knowledge or information to form a belief concerning the allegations in Paragraph 72 of the Complaint and therefore denies the same.

73.     Walmart denies the allegations in Paragraph 73 of the Complaint.

74. Walmart admits that it has refused to authorize delivery of certain goods and lacks sufficient knowledge or information to form a belief concerning the remaining allegations in Paragraph 74 of the Complaint and therefore denies the same.

75. Walmart denies the allegation in Paragraph 75 and to the extent Plaintiff refers to written communications, Walmart denies the allegations in Paragraph 75 of the Complaint to the extent they misstate or misconstrue the same.

76. Walmart denies the allegations in Paragraph 76 of the Complaint.

77. Walmart denies the allegations in Paragraph 77 of the Complaint.

78. Walmart denies the allegations in Paragraph 78 of the Complaint.

79. Walmart denies the allegations in Paragraph 79 of the Complaint.

80. Walmart denies the allegations in Paragraph 80 of the Complaint.

81. Walmart states Paragraph 81 requires no response but to the extent a response is required Walmart denies the allegations in Paragraph 81 of the Complaint.

82. Paragraph 82 contains statements to which no responsive pleading is required. To the extent a response is required, Walmart denies the allegations in Paragraph 82 of the Complaint.

83. Paragraph 83 contains statements to which no responsive pleading is required. To the extent a response is required, Walmart denies the allegations in Paragraph 83 of the Complaint.

84. Paragraph 84 contains statements to which no responsive pleading is required. To the extent a response is required, Walmart denies the allegations in Paragraph 84 of the Complaint.

85.     Paragraph 85 contains statements to which no responsive pleading is required. To the extent a response is required, Walmart denies the allegations in Paragraph 85 of the Complaint.

86.     Paragraph 86 contains statements to which no responsive pleading is required. To the extent a response is required, Walmart denies the allegations in Paragraph 86 of the Complaint.

87.     Paragraph 87 contains statements to which no responsive pleading is required. To the extent a response is required, Walmart denies the allegations in Paragraph 87 of the Complaint.

88.     Paragraph 88 contains statements to which no responsive pleading is required. To the extent a response is required, Walmart denies the allegations in Paragraph 88 of the Complaint.

89.     Paragraph 89 contains statements to which no responsive pleading is required. To the extent a response is required, Walmart admits that there is a justiciable controversy between the parties regarding the alleged validity and alleged enforceability of the Amended Commitment Letter and otherwise denies the allegations in Paragraph 89 of the Complaint.

90.     Paragraph 90 contains statements to which no responsive pleading is required. To the extent a response is required, Walmart denies the allegations in Paragraph 90 of the Complaint.

91.     Paragraph 91 contains statements to which no responsive pleading is required. To the extent a response is required, Walmart denies the allegations in Paragraph 91 of the Complaint.

92.     Walmart states Paragraph 92 requires no response but to the extent a response is required Walmart denies the allegations in Paragraph 92 of the Complaint.

93.     Paragraph 93 contains statements to which no responsive pleading is required. To the extent a response is required, Walmart denies the allegations in Paragraph 93 of the Complaint.

94.     Paragraph 94 contains statements to which no responsive pleading is required. To the extent a response is required, Walmart denies the allegations in Paragraph 94 of the Complaint.

95.     Paragraph 95 contains statements to which no responsive pleading is required. To the extent a response is required, Walmart denies the allegations in Paragraph 95 of the Complaint.

96.     Paragraph 96 contains statements to which no responsive pleading is required. To the extent a response is required, Walmart denies the allegations in Paragraph 96 of the Complaint.

97.     Paragraph 97 contains statements to which no responsive pleading is required. To the extent a response is required, Walmart denies the allegations in Paragraph 97 of the Complaint.

98.     Paragraph 98 contains statements to which no responsive pleading is required. To the extent a response is required, Walmart denies the allegations in Paragraph 98 of the Complaint.

99.     Paragraph 99 contains statements to which no responsive pleading is required. To the extent a response is required, Walmart denies the allegations in Paragraph 99 of the Complaint.

100.     Walmart denies the allegations in Paragraph 100 of the Complaint.

101.     Walmart states its review of matters relating to Plaintiff's Complaint is ongoing, and Walmart reserves the right to revise and/or supplement its responses to Plaintiff's allegations if necessary of the Complaint.

102.     To the extent that any allegation by Plaintiff in Paragraphs 1 through 100 was neither admitted nor denied, Walmart expressly denies the allegation.

103.     To the extent that Plaintiff would claim that its headings could be construed as allegations to which a response should be required, Walmart expressly denies the headings.

## Prayer for Relief

103.     Walmart denies the allegations in Plaintiff's Prayer for Relief and affirmatively denies Plaintiff is entitled to any relief requested therein.

## AFFIRMATIVE DEFENSES

1.     Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2.     Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

3.     Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

4.     Plaintiff's claims are barred, in whole or in part, by abandonment or rescission.

5.     Plaintiff's claims are barred, in whole or in part, by Plaintiff's prior material breach.

6.     Plaintiff's claims are barred, in whole or in part, by the statute of frauds.

7.     Plaintiff's claims are barred, in whole or in part, by lack or failure of consideration.

8.     Nothing in these affirmative defenses is intended to assume the burden of proof on any issue or element that Walmart does not bear.

9.     Walmart reserves the right to assert additional affirmative defenses that become evident before the time of trial.

## COUNTERCLAIMS

Pursuant to Fed. R. Civ. P. 13, Walmart hereby asserts the following counterclaims against London Luxury:

### Introduction

1.     Walmart is an international retail company engaged in, among other things, the health and wellness business that includes sales of healthcare products for use by individuals throughout the United States and around the world.

2.     Healthcare products that Walmart sells include nitrile gloves—protective handwear utilized in healthcare settings because of their qualities of strength, durability, and resistance to leakage.  Nitrile gloves are often used by medical personnel as personal protective equipment ("PPE") in high-risk circumstances involving bodily fluids and infectious diseases.

3.     To ensure that it sells quality products manufactured responsibly, Walmart establishes expectations with suppliers throughout its worldwide supply chains and imposes product performance and manufacturing standards.  Walmart's requirements are reflected in the written agreements it enters with suppliers.  Adherence to Walmart's criteria is particularly important for medical devices produced for the medical and health industries—including nitrile gloves—because they are used in circumstances where the integrity of PPE is vital for individuals' health and safety.

4.     A supplier's failure to comply with Walmart's product performance and manufacturing standards may render the supplier ineligible to continue supplying products under the clear terms of Walmart's supplier agreements.

5.     London Luxury was, as of 2020, an existing Walmart supplier for certain home goods when—in the midst of the COVID-19 pandemic—it claimed that it could supply Walmart with quality nitrile gloves manufactured in facilities that met Walmart's requirements.  London Luxury accepted Walmart's supplier agreements after which Walmart ordered gloves that London Luxury promised would be timely produced in accordance with the terms and conditions of those agreements.

6.     After lengthy and repeated delays, London Luxury eventually attempted to deliver nitrile gloves to Walmart but broke its most important promises.  London Luxury failed to demonstrate that its nitrile gloves met the agreed standards.  London Luxury attempted to retest gloves after initial failures, but those tests did not remedy London Luxury's failures.

7.     London Luxury separately violated the parties' agreement by misrepresenting the manufacturing source of gloves it delivered and for which Walmart paid.  After Walmart started to investigate irregularities in London Luxury's performance, London Luxury executives admitted they could not verify from where containers full of delivered gloves originated despite previously representing they were manufactured in certified factories and further that Walmart had already paid millions for the nitrile gloves.  To this date, London Luxury still had not identified where those nitrile gloves were produced.

8.     London Luxury promised that it could deliver substantial numbers of high-quality nitrile gloves in the midst of a global pandemic, and Walmart relied upon London Luxury's promises that it would timely deliver.  London Luxury repeatedly delayed, failed to supply what it promised with the certifications that were required, and its failures have harmed Walmart. Walmart is entitled to recover its damages as a result.

9.      In addition to damages, Walmart is entitled to declaratory relief. After London Luxury showed that it could not or would not comply with its obligations, Walmart stopped accepting or ordering more nitrile gloves, as was permitted under the parties' agreement. London Luxury responded by demanding that Walmart continue to order and pay for more gloves, despite London Luxury's material breaches of the parties' contract. Walmart seeks a declaration of rights, status, and legal relations in regard to London Luxury, including a declaration that Walmart was entitled to cancel orders, refuse deliveries, and cease business with London Luxury under the parties' agreements.

**The Parties**

10.      Walmart is a corporation organized under the laws of the State of Delaware with its principal place of business in Bentonville, Arkansas.

11.      London Luxury is a limited liability company organized under the laws of the State of New York with its principal place of business in New Rochelle, New York.

**Jurisdiction and Venue**

12.      Jurisdiction is proper under 28 U.S.C. § 1332(a) because this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.

13.      Venue is proper in the "federal and/or state courts of Benton and Washington County, Arkansas" because the parties agreed to that venue in their Direct Import Supplier Agreement, dated March 31, 2021. Walmart asserts its Counterclaims in this action as required by Federal Rule of Civil Procedure 13, but it intends to move for a transfer of this action from the Southern District of New York to the proper venue in the Western District of Arkansas, Fayetteville Division.

# Factual Background

## A. Walmart and London Luxury Discussed Different Scenarios for Nitrile Glove Supply Before They Entered into the Controlling March 2021 Supplier Agreement

14.     In early summer 2020, Walmart and London Luxury engaged in discussions regarding the possibility of London Luxury becoming a nitrile glove supplier to Walmart. At the time, London Luxury already supplied Walmart with certain household products.

15.     In August 2020, the parties signed contracts. London Luxury accepted the terms of two Walmart domestic supplier agreements, both effective August 11, 2020. One of those agreements is for suppliers who deliver goods in the United States for Walmart's Household Chemicals Department (designated "D13") and the other is for suppliers who deliver goods in the United States for Walmart's Over the Counter Department (designated "D40"). Walmart domestic suppliers whose products are manufactured outside of the United States are responsible for importing goods into the United States for delivery to Walmart. London Luxury did not ship goods to Walmart in accordance with purchase orders issued under the August 2020 agreements, and it never imported and delivered nitrile gloves to Walmart in the United States as a domestic supplier.

16.     Discussions between Walmart and London Luxury regarding nitrile gloves continued after August 2020 and extended into 2021.

17.     On or about February 23, 2021, Walmart issued to London Luxury a letter stating, in part, that Walmart "committed to purchase" from London Luxury certain quantities of nitrile gloves for which London Luxury "shall be responsible . . . for importing the Product into the United States and clearing U.S. Customs upon arrival." London Luxury neither accepted orders from Walmart under the February 23, 2021 letter nor did it import nitrile gloves into the United States for delivery to Walmart.

**B.     The March 2021 Supplier Agreement**

18.     In March 2021, London Luxury agreed to supply nitrile gloves to Walmart as a direct import supplier instead of as a domestic supplier.  Direct import suppliers are those who deliver goods to Walmart outside of the United States under terms and conditions in which Walmart will accept ownership of goods abroad and assume responsibilities for importing those goods into the United States.  The direct import supplier relationship is distinct from the domestic supplier relationship, and distinctions in those relationships are reflected in different contract terms.

19.     On March 31, 2021, London Luxury accepted the terms of Walmart's Direct Import Supplier Agreement (the "March 2021 Supplier Agreement").  The March 2021 Supplier Agreement is for "direct import suppliers" to Walmart's Over the Counter Department (designated "D40") and had the unique agreement number "026157-40-0."

20.     Between May 2021 and September 2021, London Luxury accepted 18 purchase orders from Walmart.  Each of those purchase orders was issued under the March 2021 Supplier Agreement and specifically referenced that agreement number—as "026157-400."  Under each of the purchase orders London Luxury accepted, it agreed to deliver gloves to Walmart outside of the United States and under terms and conditions set forth in the March 2021 Supplier Agreement.  If London Luxury performed as promised, Walmart would take possession of the gloves abroad and assume responsibilities for their importation into the United States.

21.     The March 2021 Supplier Agreement states that it "consists of (1) the[] Standard Terms and Conditions for Direct Import Suppliers ('Terms and Conditions'), and (2) Company's minimum requirements and Standards for Suppliers posted at

http://corporate.walmart.com/sourcingstandards-resources as may be amended from time to time by Company (collectively, the 'Standards')." (March 2021 Supplier Agreement, at 2.)

22. The March 2021 Supplier Agreement includes a merger clause, which, among other things, provides that all prior agreements and understandings regarding the subject matter of the agreement are superseded by the March 2021 Supplier Agreement, the Standards identified therein, and any purchase orders:

> This Agreement, the Standards (as may be amended from time to time) and any Order constitute the full understanding of the parties, a complete allocation of risks between them and a complete and exclusive statement of the terms and conditions of their agreement. All prior agreements, negotiations, dealings and understandings, whether written (including any electronic record) or oral, regarding the subject matter hereof, are superseded by this Agreement. Any changes in this Agreement shall be in writing and executed by both parties. Furthermore, if there is a conflict of terms between this Agreement, an Order, the Standards, business programs, processes, directives or policies incorporated into this Agreement, this Agreement shall be the controlling document.

(March 2021 Supplier Agreement ¶ 41.)

23. The March 2021 Supplier Agreement provides, among other things, that London Luxury will comply with the requirements in "Standards" made part of the Supplier Agreement:

> Supplier warrants that it has read and understands and will comply with the requirements set forth in the Standards located at http://corporate.walmart.com/ sourcing-standards-resources, and as may be amended from time to time by Company.

(March 2021 Supplier Agreement ¶ 26.)

24. The March 2021 Supplier Agreement defines "Standards" to include posted standards and requirements, specifying: "the Walmart Inc. Standards for Suppliers posted at http://corporate.walmart.com/sourcing-standardsresources and minimum requirements posted at http://corporate.walmart.com/suppliers/minimum-requirements, as may be amended from time to time by Company." (March 2021 Supplier Agreement, at 3.)

25.     According to the March 2021 Supplier Agreement, London Luxury represented, warranted, and covenanted, by acceptance of any purchase order, that it was in compliance with, and would continue to be in compliance with, the Standards and further, when required by Walmart's policies, London Luxury's merchandise (*i.e.*, nitrile gloves) would be tested by third-parties with results provided to Walmart:

> By acceptance of an Order, Supplier represents, warrants and covenants that:
> (a) Supplier is in compliance with and will continue to comply with Company's Standards; . . . (i) Where required by Law, or by Company's policies, the Merchandise has been tested by third-party testing bodies approved by Company, found compliant with all applicable standards and Laws, and the results of such tests will be provided to Company at Company's request[.]"

(March 2021 Supplier Agreement ¶ 17.)

26.     The March 2021 Supplier Agreement provides that Walmart has the right to cancel any outstanding purchase order, refuse any shipments, and otherwise cease to do business with London Luxury if it reasonably believes London Luxury has failed to comply with any terms of the Standards:

> (a) Supplier will comply with the Standards. . . .  Supplier shall ensure through self-audits, third party audits or approved certification programs that all factories producing Merchandise, including subcontractors' factories, are in compliance with the Standards . . . .
>
>         . . .
>
> (c) Company reserves the right to cancel any outstanding Order, refuse any shipments and otherwise cease to do business with Supplier if Supplier fails to comply with any terms of the Standards or if Company reasonably believes Supplier has failed to do so.

(March 2021 Supplier Agreement ¶ 37.)

27.     The Standards incorporated into the March 2021 Supplier Agreement provide, among other things, that London Luxury can be rendered "ineligible" to do business with Walmart if London Luxury is found to have produced merchandise in, or subcontracted to, an

unauthorized facility, or if the merchandise it supplies is not what it claims that merchandise to be:

> "If Walmart discovers a supplier producing merchandise in or subcontracting to an unauthorized facility, the supplier may become ineligible to do business with Walmart."  (https://corporate.walmart.com/suppliers/requirements/compliance-areas)
>
> . . . .
>
> "Provide only genuine products that are what they claim to be." (https://corporate.walmart.com/suppliers/requirements/compliance-areas#product-safety).

28.     The March 2021 Supplier Agreement provides that London Luxury's failure to comply with one or more terms of a purchase order constitutes an event of default and shall be grounds for the exercise by Walmart of any of the remedies provided for in the Supplier Agreement:

> Supplier's failure to comply with one or more terms of an Order shall constitute an event of default and shall be grounds for the exercise by Company of any of the remedies provided for in the Agreement and/or by applicable law.  Company may cancel all or any part of an Order at any time without any liability if: (i) Supplier fails to materially comply with one or more terms of an Order . . . .

(March 2021 Supplier Agreement ¶ 2(e)(i).)

29.     The March 2021 Supplier Agreement provides that Walmart, in its discretion, may reject merchandise supplied by London Luxury, among other reasons, if it finds that the merchandise is defective in design, workmanship or materials, or produced under conditions that violate the Standards of the Supplier Agreement:

> [I]n its sole discretion, and in addition to such other remedies provided under Law or this contract, [Walmart may] reject the Merchandise if Company finds at any time that any of the Merchandise ordered: . . . is defective in design, workmanship or materials, or otherwise not in conformity with the requirements of the Order . . . or, . . . is found to have been produced under conditions that violate the Company's Standards. . . .

(March 2021 Supplier Agreement ¶¶ 12(a)(i) and (vi).)

30.     The March 2021 Supplier Agreement provides that Walmart shall have the right

to cancel any purchase order, without incurring any liability, for which Walmart has reasonably

determined that preproduction or production samples do not satisfy its specifications:

> Company shall have the right to cancel any Order, without incurring any liability, for
> which Company has reasonably determined that preproduction or production samples do
> not satisfy Company's specifications.

(March 2021 Supplier Agreement ¶ 11.)

31.     The March 2021 Supplier Agreement provides that London Luxury's breach

or failure to comply with any terms or conditions of the Agreement, among other things,

authorizes cancellation by Walmart of any part of any undelivered purchase order or rejection

(or revocation of acceptance) of all or any part of any delivered shipment:

> Supplier's breach of or failure to comply with any of the Terms and Conditions of
> this Agreement or any Order shall be grounds for Company to exercise any one or
> more of the following remedies: (a) Cancellation of all or any part of any
> undelivered Order without notice . . . ; (b) Rejection (or revocation of acceptance)
> of all or any part of any delivered shipment. . . .  Payment of any invoice shall not
> limit Company's right to reject or revoke acceptance. . . .

(March 2021 Supplier Agreement ¶ 21.)

32.     The March 2021 Supplier Agreement provides that Walmart is entitled to cancel

any part of any purchase order if London Luxury shall default in performance by failing to make

progress in the work so as to endanger performance under the Supplier Agreement and if London

Luxury does not remedy such default within ten (10) days after written notice by Walmart:

> Company may cancel all or any part of an Order at any time without any liability
> if: . . . at any time Supplier shall default in performance or shall so fail to make
> progress in the work as to endanger performance and provided Supplier shall not
> remedy such default within ten (10) days after written notice by Company . . . .

(March 2021 Supplier Agreement ¶ 2(e)(iv).)

33.     With respect to termination, the Supplier Agreement provides:  "Upon at least

thirty (30) days notice, either party may terminate this Agreement for any or no reason and

without penalty."  (March 2021 Supplier Agreement ¶ 33.)

**C.     London Luxury Failed to Perform in Accordance with Purchase Orders Walmart Issued Under the March 2021 Supplier Agreement**

34.     Between May and September 2021, Walmart issued purchase orders to London

Luxury for a total quantity of more than one million cartons of nitrile gloves.

35.     During those months, London Luxury's delays, failures to timely provide required

information, and inability to meet planned schedules caused Walmart to withdraw or replace

multiple purchase orders in attempts to mitigate London Luxury's inabilities to perform as

promised.

36.     Eventually, London Luxury accepted 18 purchase orders that Walmart issued

under the March 2021 Supplier Agreement.  Each of those purchase orders referred to the March

2021 Supplier Agreement's unique identification number, 026157-40-0, and each recited that it

was conditioned upon the "existence of a current and fully executed Walmart supplier

agreement."

**D.     London Luxury Breached the March 2021 Supplier Agreement**

*1.     London Luxury Failed to Supply Gloves on Promised Timelines*

37.     Walmart's attempts to order nitrile gloves from London Luxury were repeatedly

and materially delayed.  After promising in May 2021 that it could meet a fixed schedule of

regular deliveries starting in late spring 2021 (a promise from London Luxury that was itself a

revised version of promises London Luxury made and broke earlier about its ability to supply

gloves during the COVID-19 pandemic), London Luxury proved unprepared to deliver any

product until August 2021.  London Luxury's inability to meet deadlines to which it committed

forced Walmart to withdraw and replace purchase orders while rescheduling its plans for the nitrile gloves London Luxury had promised to deliver.

38.     The March 2021 Supplier Agreement specifies that time is of the essence with respect to the delivery of goods and, if goods are not delivered within the time specified in any purchase order, London Luxury's failure is a material breach, entitling Walmart to exercise all available remedies.

### 2. *London Luxury Sourced Gloves from Unauthorized or Unidentified Manufacturing Facilities*

39.     London Luxury represented that the nitrile gloves it would deliver to fill Walmart's purchase orders would be manufactured at two facilities: Mercator Medical (Thailand) Ltd. ("Mercator") and Careglove SDN BHD ("Careglove") in Malaysia.

40.     When London Luxury started delivering gloves in the summer of 2021, it failed to provide on a timely basis information Walmart required to confirm and approve the qualifications of manufacturing facilities at which nitrile gloves were being produced.  These failures alone gave rise to concerns that London Luxury was unable to comply with Walmart's required Standards for suppliers.

41.     Among issues that arose, London Luxury informed Walmart that a third facility—MNA—was repackaging gloves purportedly manufactured by Careglove before they were delivered to Walmart.  After Walmart received and paid for repacked gloves, however, Walmart received information that those gloves did not, in fact, originate from Careglove factories.

42.     When Walmart confronted London Luxury with its understanding that gloves repacked at MNA did not originate with Careglove factories, London Luxury admitted that to be true.  Specifically, London Luxury executives admitted that containers full of gloves delivered to Walmart, and for which London Luxury had been paid millions of dollars, were from an

unknown factory source and not manufactured at Careglove. In fact, London Luxury to this day cannot verify the facility at which gloves repacked by MNA were manufactured.

43. London Luxury's delivery to Walmart of nitrile gloves from an unknown manufacturing source is a particularly concerning breach of the March 2021 Supplier Agreement and its incorporated Standards. Certainty regarding the origin of manufactured goods— especially medical devices like nitrile gloves—is critical to ensure that Walmart can confirm quality goods have been produced in reputable and safe manufacturing facilities and also allows for goods to be traced to their origin if any issues arise. Suppliers' obligation to identify, warrant, and document the manufacturing source for goods is a material term of the March 2021 Supplier Agreement.

44. London Luxury knew it was required to accurately identify the facilities at which the nitrile gloves were manufactured, yet it misrepresented or concealed information regarding the origin of gloves it delivered. London Luxury's misrepresentations and concealment also troublingly aligned with its demands for and receipt of payment from Walmart for those gloves. London Luxury's conduct is a material breach of the March 2021 Supplier Agreement that entitles Walmart to exercise all available remedies.

### 3. London Luxury Failed to Deliver Nitrile Gloves That Passed Quality Inspections

45. In addition to its other breaches of the March 2021 Supplier Agreement, London Luxury materially breached its promises by delivering nitrile gloves that failed quality inspection testing and then tried to deliver more.

46. Nitrile gloves that London Luxury sought to deliver from both the Mercator and Careglove manufacturing facilities failed initial quality tests based on reports Walmart received in late 2021.

47.    London Luxury pleaded for retests and, in December 2021, Walmart provided London Luxury an opportunity to retest the products under a specific retesting protocol.  Those retests failed to assure that the gloves were manufactured in accordance with required quality standards.

48.    As a consequence of the gloves failing required quality tests procedures and London Luxury's inability to demonstrate that the gloves were satisfactory and had all required certifications, Walmart exercised its rights and has refused delivery of the goods in accordance with the March 2021 Supplier Agreement.

49.    London Luxury's delivery of gloves that failed to meet quality testing requirements and its demands to deliver more are material breaches of the March 2021 Supplier Agreement that entitle Walmart to exercise all available remedies.

**E.    Walmart Exercised Its Right to Cancel Purchase Orders, Reject Shipments, and Cease Doing Business with London Luxury.**

50.    As a consequence of Walmart's concerns with London Luxury that are amply supported by London Luxury's multiple breaches of the March 2021 Supplier Agreement and purchase orders, Walmart exercised its rights and directed London Luxury to stop production of any outstanding Walmart nitrile glove orders, refused to accept deliveries of goods that do not meet contractual requirements, and declined to issue additional purchase orders for nitrile gloves.

**F.    Walmart Has Been Damaged.**

51.    To date, Walmart has paid London Luxury $3,403,400 for nitrile gloves for which London Luxury cannot identify the manufacturing facility (or facilities) at which the gloves were manufactured.  Walmart has also been damaged, in an amount to be determined, by London Luxury's delivery of and Walmart's payment for gloves that have not received required quality certifications.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

52.    Walmart restates the foregoing allegations as though fully set forth herein.

53.    The March 2021 Supplier Agreement is an existing and enforceable contract between Walmart and London Luxury.

54.    London Luxury has obligations to Walmart under the March 2021 Supplier Agreement, including, among other things, to:

(a)    "comply with [Walmart's] Standards" (¶¶ 17, 37) and "terms of an Order" (¶ 2(e)), which includes the obligation to (i) not produce merchandise in or subcontract to an unauthorized facility; (ii) meet all Walmart-specific requirements for all items offered for sale; (iii) submit products for testing, where required; and (iv) provide only genuine products that are what they claim to be.

(b)    produce ordered nitrile gloves that are not "defective in design, workmanship or materials, or otherwise not in conformity with the requirements of the Order . . . or, . . . found to have been produced under conditions that violate the Company's Standards." (¶¶ 12(a)(i) and (vi).)

(c)    ship product "within the time specified" in purchase orders. (¶ 15.)

55.    London Luxury affirmed and reiterated its agreement to the terms of the March 2021 Supplier Agreement by accepting purchase orders Walmart issued in accordance with that supplier agreement.

56.    London Luxury breached the March 2021 Supplier Agreement by, among other things:

(a)    failing to produce nitrile gloves in compliance with Standards and terms of purchase orders, including (i) delivering gloves not produced in an identified manufacturing facility; (ii) failing to meet all Walmart-specific requirements for all items offered for sale, namely, non-defective products manufactured from a known source; (iii) failing to submit products for testing, where required; and (iv) failing to provide only genuine products that are what they claim to be, which failure occurred, at minimum, in relation to nitrile gloves repacked at MNA;

(b)    producing nitrile gloves that are "defective in design, workmanship or materials," or otherwise not in conformity with the requirements of one or more purchase

orders made by Walmart, or found, for example, in the case of MNA repacked nitrile gloves, to have been produced under conditions that violate Walmart Standards (¶¶ 12(a)(i) and (vi)); and

(c)    failing to ship certain of the nitrile gloves within the time specified in the purchase orders.

57.    Walmart has sustained damages resulting from London Luxury's violation and breach of the March 2021 Supplier Agreement as follows:

(a)    $3,403,400 representing the amount paid by Walmart to London Luxury for nitrile gloves repacked at the MNA facility using product from an unknown and unauthorized origin and manufacturing source;

(b)    damages in an amount to be proven at trial resulting from London Luxury's delivery of nitrile gloves that are defective in design, workmanship, or materials, or otherwise not in conformity with the requirements of one or more purchase orders made by Walmart, or produced in violation of Walmart Standards; and

(c)    failure to ship nitrile gloves within the time specified in the purchase orders and producing nitrile gloves that failed to meet product specifications in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Declaratory Relief)

58.    Walmart restates the foregoing allegations as though fully set forth herein.

59.    Walmart is a person interested under a written contract, namely, the March 2021 Supplier Agreement and related purchase orders. Walmart's rights, status and other legal relations are affected by its contract with London Luxury.

60.    The March 2021 Supplier Agreement provides that Walmart "has no obligation and makes no promises to purchase any minimum amount of Merchandise from Supplier." The March 2021 Supplier Agreement further provides that it "and any [purchase order] constitute the full understanding of the parties" and further "[a]ll prior agreements, negotiations, dealing and understandings, whether written . . . or oral, . . . are superseded by" the March 2021 Supplier Agreement.

61.     The March 2021 Supplier Agreement provides that Walmart "reserves the right to cancel any outstanding Order, refuse any shipments and otherwise cease to do business with [London Luxury] if [London Luxury] fails to comply with the terms of the Standards or if [Walmart] reasonably believes [London Luxury] has failed to do so" under the Supplier Agreement.

62.     During the course of London Luxury's purported performance, Walmart reasonably believed London Luxury had failed to comply with terms of the Standards in the Supplier Agreement, authorizing Walmart to cease doing business with London Luxury. Walmart thereafter ceased doing business with London Luxury in conformity with its contractual right under the March 2021 Supplier Agreement.

63.     London Luxury alleges that what it characterizes as the Amended Commitment Letter "is a valid and binding contract between London Luxury and Walmart" and that the March 2021 Supplier Agreement does not "supersede[] the Amended Commitment Letter" or otherwise authorize Walmart to cease doing business with London Luxury. (*See* Plaintiff's Complaint.)

64.     Walmart seeks to have determined questions of construction and validity of any obligations to purchase nitrile gloves arising under the March 2021 Supplier Agreement or what London Luxury describes as the Amended Commitment Letter.

65.     Walmart seeks a declaration of rights, status and legal relations in regard to the parties' agreements, including a specific finding that Walmart has no liability under what London Luxury characterizes as the Amended Commitment Letter and that Walmart had a valid right to cease doing business with London Luxury under the March 2021 Supplier Agreement based on its reasonable belief that London Luxury had failed to comply with one or more terms of the Standards. Specifically, Walmart further seeks a declaration that it:

(a)     does not have a "non-cancellable and irrevocable commitment" to purchase any specific quantity of nitrile gloves from London Luxury under what London Luxury characterizes as the February Commitment Letter on the grounds that it is superseded by and is in conflict with the March 2021 Supplier Agreement;

(b)     does not have a commitment to purchase any specific quantity of nitrile gloves from London Luxury based on what London Luxury characterizes as the April Commitment Letter on the grounds, among other things, that it is not an amendment to the February Commitment Letter and does not seek to reinstate any "non-cancellable and irrevocable commitment" to purchase nitrile gloves from London Luxury;

(c)     does not have any obligation, including any purchase commitment, under what London Luxury characterizes as the June Commitment Letter because, among other things, its authenticity has not been established and it refers only to prospective events allegedly to be performed by Walmart if London Luxury builds "US based manufacturing facilities and operation[sic] due to open in the near future," which events have not yet occurred.

(d)     does not otherwise have any obligation, including any purchase commitment, under any of what London Luxury characterizes as the February Commitment Letter, the April Commitment Letter, or the June Commitment Letter, individually or in combination.

66.     There is a justiciable controversy, that is to say, a controversy in which a claim of right by Walmart is asserted against London Luxury, which has an interest in contesting it.

67.     The controversy is between persons, Walmart and London Luxury, whose interests are adverse.

68.     Walmart has a legally protectable interest in the controversy, in other words, a legally protectable interest.

69.     The issues involved in the controversy between Walmart and London Luxury are ripe for judicial determination.

70.     Walmart respectfully requests that this Court enter a declaration as follows:

a.     Walmart is not obligated to purchase any minimum quantity of nitrile gloves from London Luxury pursuant to what London Luxury characterizes as the Amended Commitment Letter or any of its alleged component letters; and

      b.      Walmart was, and is, entitled to cease doing business with London Luxury pursuant to the March 2021 Supplier Agreement and to terminate the March 2021 Supplier Agreement and any other agreement with London Luxury found to exist.

**Prayer for Relief**

WHEREFORE, Walmart respectfully requests that the Court enter an order granting the following relief:

(1)      monetary damages under Walmart's First Claim for Relief for breach of contract of no less than $3,403,400, and for other amounts to be proven at trial;

(2)      declaratory judgment under Walmart's Second Claim for Relief, declaring:

      a.      Walmart is not obligated, and is excused from an obligation, to purchase any minimum quantity of nitrile gloves from London Luxury pursuant to the what London Luxury characterizes as the Amended Commitment Letter or any of its alleged component letters; and

      b.      Walmart was, and is, entitled to cease doing business with London Luxury pursuant to the March 2021 Supplier Agreement and to terminate the March 2021 Supplier Agreement and any other agreement with London Luxury found to exist.

(3)      Pre- and post-judgment interest;

(4)      Reasonable attorney fees and costs to the extent allowed at law;

(5)      Such other and further relief as the Court deems just and proper or allowed by law.

**<u>Jury Demand</u>**

Pursuant to Fed. R. Civ. P. 38, Walmart hereby demands a jury on all issues so triable by right and raised in London Luxury's complaint and Walmart's counterclaims.

Dated: January 31, 2022
New York, New York

Respectfully submitted,

By: _____*Lee A. Armstrong*_____

JONES DAY
Lee A. Armstrong
Thomas E. Lynch
Nikolai Krylov
250 Vesey Street
New York, NY 10281-1047
(212) 326-3939

*Counsel for Walmart Inc.*


KUTAK ROCK LLP
Bartholomew L. McLeay (*pro hac vice application to be submitted*)
Joshua C. Weiner (*pro hac vice application to be submitted*)
1650 Farnam Street
The Omaha Building
Omaha, NE 68102-2103
(402) 346-6000

Russell C. Atchley (*pro hac vice application to be submitted*)
5111 West JB Hunt Drive, Suite 300
Rogers, AR 72758-5083
(479) 250-9700

*Co-Counsel for Walmart Inc.*