IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**LONDON LUXURY, LLC**                                    **PLAINTIFF/COUNTER-DEFENDANT**

**V.**                                   **CASE NO. 5:22-CV-5059**

**WALMART, INC.**                                         **DEFENDANT/COUNTER-PLAINTIFF**

### ORDER

Before the Court are a series of related discovery disputes. In August of 2023 Walmart notified London Luxury that it was asserting privilege over a host of documents that were otherwise responsive to London Luxury's discovery requests. Walmart provided a privilege log identifying the documents it was withholding. London Luxury protested. After conferring, it was clear the parties were at an impasse. Per the Court's Case Management Order, the parties brought their dispute to the Court's attention in the form of letters and legal memorandum (which the Court will later mark as Court's exhibits). Walmart produced the disputed documents for the Court's *in camera* inspection.

In this attorney-client privilege dispute, Walmart is the client who owns the privilege. Walmart is asserting the privilege over communications (and/or work product) that its non-lawyer business executives had with other Walmart employees who are members of its in-house legal team. The communications at issue all relate in some form or fashion to the nitrile glove transactions that are at the heart of the parties' claims and defenses. For factual context, the Court incorporates by reference and refers the reader to its Summary Judgment Opinion and Order filed today. Doc. 399.

This Order will be the first of several rulings on the privilege issues, which the Court will categorize by the in-house attorneys involved with the communications at issue. This Order addresses communications that Walmart's non-lawyer employees had with in-house attorneys Vicki Vasser, Greg Dow, and Nicole Chapman. After first reviewing the legal standard, the Court will first separately discuss whether the communications with these three attorneys may be withheld as privileged.

Under Federal Rule of Evidence 501, when parties are litigating state law claims, state law defines the elements of attorney-client privilege. Arkansas Rule of Evidence 502 provides the basic rule in Arkansas:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

Further, when evaluating whether a client's employee's communications with an attorney should be shielded from production due to attorney-client privilege, the following five factors are considered:

> (1) whether the communication was made for the purpose of securing legal advice; (2) whether the employee making the communication did so at the direction of his corporate superior; (3) whether the superior made the request so that the corporation could secure legal advice; (4) whether the subject matter of the communication is within the scope of the employee's corporate duties; and (5) whether the communication is not disseminated

2

beyond those persons who, because of the corporate structure, need to know its contents.

*Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 609 (8th Cir. 1977).

Another guiding principle is particularly applicable in this case: "[T]he attorney-client privilege cannot at once be used as a shield and a sword." *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2nd Cir.), *cert. denied,* 112 S. Ct. 63 (1991). Because "[a] defendant may not use the privilege to prejudice his opponent's case . . . the privilege may implicitly be waived when [the] defendant asserts a claim that in fairness requires examination of protected communication." *Id.*

The Court now applies those legal standards to the first group of three in-house attorneys:

1. <u>Communications and Documents related to Vicki Vasser</u>: Vicki Vasser is an in-house Walmart attorney who was asked by Garrett Small (and others) to review transactional documents related to Walmart's nitrile glove transactions with London Luxury and Heypex.  Ms. Vasser was not consulted in a litigation or pre-litigation context.  She was not asked for specific legal advice on how to handle a claim or to advise Walmart about the substantive law as applied to a particular situation.  In the context of this matter, Ms. Vasser worked collaboratively with a team of non-lawyer co-employees to provide legal input as it related to the structure or documentation of business transactions that her business colleagues were negotiating (or had negotiated).

3

The attorney-client privilege analysis for Ms. Vasser has a unique twist. She has recently been disclosed as a witness that Walmart intends to call in its case-in-chief. Walmart contends that her testimony will be offered for the limited purpose of rebutting the argument that she reviewed and "approved" the version of the February 2021 Commitment Letter that was fully executed by Mr. Small and Mr. Jason, the CEO of London Luxury. By listing her as a witness, Walmart concedes that it has waived the attorney-client privilege—but only to a limited extent. According to Walmart, it is only waiving privilege to a certain period prior to the execution of the commitment letter. To that limited extent Walmart has voluntarily provided London Luxury certain documents over which it previously asserted privilege. Walmart provides further assurances to London Luxury that there are no documents that can be interpreted as Ms. Vasser having approved the transaction in question. Walmart continues to assert privilege over all other documents associated with Ms. Vasser's communications regarding the glove transactions.

The Court disagrees with Walmart's argument. If Ms. Vasser is called as a witness, the Court sees no reasonable way to surgically limit her testimony on cross examination to the discrete question of whether she reviewed the final version of the February 2021 Commitment Letter (fully executed March 19, 2021). Once Ms. Vasser is called as a witness, her credibility may be impeached, and that may go outside the scope of what Walmart (mis)characterizes as "rebuttal" testimony.  For example, London Luxury would have the right to impeach her

credibility with prior inconsistent statements under Rule 613, or with prior inconsistent testimony under Rule 801(d)(1), or admissions under Rule 801(d)(2).

At this juncture, London Luxury doesn't know what it doesn't know about the Vasser documents still being withheld. It would be unfair for Walmart to have the benefit of calling Ms. Vasser on direct while withholding potential impeachment material from London Luxury. Walmart will not be permitted to at once use the attorney-client privilege as both a shield and a sword. *United States v. Bilzerian,* 926 F.2d at 1292.  The Court finds that Walmart's waiver is a complete one, not a partial one.

And even if Walmart had not expressly waived the privilege, it "implicitly [ ] waived [the privilege by] assert[ing] a claim [or defense] that in fairness requires examination of protected communications." *Id*. As discussed more extensively in the Court's Summary Judgment Opinion, Ms. Vasser's role is inextricably baked into the center of the parties' contentions on their competing breach of contract claims and defenses.

Walmart must immediately produce all Vasser documents that are still being withheld and that are dated prior to the filing of suit by London Luxury. This is not to say, however, that all such documents are admissible in evidence. Admissibility is a different question to be answered on a different day based on a different legal standard.  This ruling does *not* apply to summaries of interviews that Ms. Vasser provided to Walmart's Global Investigations team—the Court will separately assess the work-product privilege that Walmart has asserted with

5

respect to the work of Global Investigations in this matter. If requested, Walmart must also make Ms. Vassar available for a deposition prior to trial.

2. <u>Greg Dow</u>: Greg Dow is a Walmart in-house attorney. As laid out in the Court's Summary Judgment Opinion, Mr. Dow's involvement in the glove transaction was relatively early on the timeline. Mr. Dow's role was not the drafting of transactional documents: He gave substantive legal advice about Walmart's liability and exposure based on his review of the facts related to a July 2020 award of nitrile glove business to London Luxury.

Mr. Dow's legal role is only known to the Court insofar as he is mentioned in the summary judgment papers. Mr. Dow is alleged to have given legal advice to certain Walmart employees, including Mr. Oaks, Mr. Small, and Ms. Chasity Prince, to the effect that Walmart was bound by the July 2020 award (including certain verbal commitments), which amounted to the purchase obligation of three million boxes of gloves per month for twelve months. This is not to say that Mr. Dow's advice was legally accurate, but rather to explain the actions of other Walmart employees afterwards.

Mr. Dow's legal assessment was shared widely within Walmart and took on a life of its own: Mr. Small exploited it frequently to justify his analysis of Walmart's nitrile glove business. Mr. Dow's legal conclusion regarding Walmart being on the hook (and that more purchase orders would therefore be forthcoming) was also reported by Mr. Small to Marc Jason. Later, after Walmart had cancelled its 2020 purchase orders, Mr. Small shared Mr. Dow's legal assessment with a Sam's Club

employee in an effort to unload the gloves on an entirely different division of Walmart.

All of that said, and rather oddly, the Court is not aware that Mr. Dow has ever authored a written communication about the glove contracts. The Court's *in camera* review of withheld documents did not locate any emails or other communications that were to-or-from Mr. Dow. The Dow documents at issue consist merely of second-hand emails where Dow's legal advice has been repeated by one Walmart employee to other Walmart employees. Walmart inadvertently produced these documents to London Luxury, and they have been used during depositions and motion practice, despite Walmart's extensive efforts to claw them back.

In its summary judgment motion, Walmart asserted a legal argument that the February 2021 Commitment Letter was unenforceable because it was premised on Walmart's mistaken belief about its preexisting obligation to purchase three million boxes a month from London Luxury. Walmart blames that mistake on Mr. Small, who spread the "mistaken" information in bad faith. There is a fundamental unfairness in shielding Mr. Dow's legal advice from London Luxury while Walmart selectively uses it to make legal arguments in support of its position. *United States v. Bilzerian,* 926 F.2d at 1292.

Moreover, the privilege does not apply where the client has allowed the communication to be "disseminated beyond those persons who, because of the corporate structure, need to know its contents," *Diversified Indus., Inc. v. Meredith,*

572 F.2d at 609, such as the Sam's Club buyer here. Nor did Walmart maintain the confidentiality of Mr. Dow's legal conclusion. Mr. Small's sharing of the "Walmart is on-the-hook" legal conclusion with Mr. Jason waived the privilege as well. *Id*.

For these reasons, Mr. Dow's alleged legal conclusions are not protected by the attorney-client privilege, and therefore Walmart is not entitled to claw them back.

3. <u>Nicole Chapman</u>: Ms. Chapman is an in-house attorney for Walmart. Her role in this matter, and the Court's analysis of it, is much the same as Ms. Vasser's: transactional review and documentation. Ms. Chapman's role, however, is more specific to the Heypex transaction. The interaction between the quantities desired to fulfil Heypex's orders and the quantities ordered from London Luxury is critical issue in this case because it sheds light on Walmart's motivations. And Ms. Chapman played an important role on the team assigned to conduct Walmart's strategic thinking on this front. In this vein, like Ms. Vasser, Ms. Chapman's role is baked into the parties' contentions on their competing breach of contract claims and defenses. Walmart has "implicitly [ ] waived [the privilege by] assert[ing] a claim [or defense] that in fairness requires examination of protected communication." *United States v. Bilzerian,* 926 F.2d at 1292. Walmart must immediately produce all Chapman documents that are still being withheld and that are dated prior to the filing of suit by London Luxury (not to include any interview summaries prepared by Global Investigations).

**IT IS SO ORDERED** on this 8th day of March, 2024.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE