# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF ARKANSAS
# FAYETTEVILLE DIVISION

**LONDON LUXURY, LLC**                                    **PLAINTIFF/COUNTER-DEFENDANT**

**V.**                              **CASE NO. 5:22-CV-5059**

**WALMART, INC.**                                              **DEFENDANT/COUNTER-PLAINTIFF**

## ORDER REGARDING GLOBAL INVESTIGATIONS WORK PRODUCT

Before the Court are a series of related discovery disputes. In August of 2023 Walmart notified London Luxury that it was asserting privilege over a host of documents that were otherwise responsive to London Luxury's discovery requests. Walmart provided a privilege log identifying the documents it was withholding. London Luxury protested. After conferring, it was clear the parties were at an impasse.  Per the Court's Case Management Order, the parties brought their dispute to the Court's attention in the form of letters and legal memorandum (which the Court will later mark as Court's exhibits). Walmart produced the disputed documents for the Court's *in camera* inspection.

In this attorney-client and work product privilege dispute, Walmart is the client who owns the privilege. Walmart is asserting privilege over communications that its business employees had with its attorney employees.  Walmart is also asserting privilege over investigative materials prepared by its attorney-investigator employees. The communications and work product at issue relate to the nitrile glove transactions that are at the heart of the parties' claims and defenses. For factual context, the Court incorporates by reference and refers the reader to the factual background section of its Summary Judgment Opinion and Order filed on March 8th. Doc. 399.

1

This Order is the second of several rulings on these privilege issues. *See* Doc. 398 for the first Order. This Order categorically addresses investigative reports and employee interview summaries prepared by Walmart's in-house internal investigations team known as Walmart "Global Investigations."[1] The work of this unit is directed by attorneys who are employed by Walmart. After first reviewing the legal standard, the Court will then discuss whether the investigative reports may be withheld as attorney-client communications and/or attorney work-product.

Under Federal Rule of Evidence 501, when parties are litigating state law claims, state law defines the elements of attorney-client privilege. Arkansas Rule of Evidence 502 provides the basic rule in Arkansas:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

---

1. In a few instances, the documents considered here also include benign cover emails written to-or-from Walmart in-house attorneys and to-or-from other Walmart employees advising of matters pertaining to the investigation being conducted by Global Investigations. Specifically, this is the situation with WM_Priv Documents ending in bates-stamp 092,305,306, and 308.

Further, when evaluating whether a client's employee's communications with an attorney should be shielded from production due to attorney-client privilege, the following five factors are considered:

> (1) whether the communication was made for the purpose of securing legal advice; (2) whether the employee making the communication did so at the direction of his corporate superior; (3) whether the superior made the request so that the corporation could secure legal advice; (4) whether the subject matter of the communication is within the scope of the employee's corporate duties; and (5) whether the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 609 (8th Cir. 1977).

Finally, Federal Rule of Civil Procedure 26(b)(3) speaks to documents that may be withheld when prepared during or in anticipation of litigation.

> (A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
>> (i) they are otherwise discoverable under Rule 26(b)(1); and
>>
>> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.
>
> (C) *Previous Statement.* Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:

>> (i) a written statement that the person has signed or otherwise adopted or approved; or
>
> (ii) a contemporaneous stenographic, mechanical, electrical, or other recording—or a transcription of it—that recites substantially verbatim the person's oral statement

The Court now applies these legal standards to multiple documents generated by Walmart's Global Investigations team, which the Court has reviewed *in camera*. A listing of such documents is attached to this order as Exhibit 1.

For added context specific to the work-product privilege, it should be noted that by November 12, 2021, it was clear that Walmart's relationship with London Luxury was coming to an ugly end. *See* Doc. 399, pp. 31-33. London Luxury filed suit in New York state court on January 5, 2022. Walmart removed the matter to federal court on January 24, 2022. Based on the Court's review of withheld documents, Global Investigation's attorneys and investigators began interviewing witnesses on November 22, 2021, and continued to do so through January 31, 2022. Electronic stored documents (ESI) were collected and reviewed from December 2, 2021, through February 9, 2022. The first working draft of the Global Investigations report is dated February 18, 2022. The report was then revised a few times before being finalized on April 18, 2022. A further revised report is dated June 7, 2022. The Court will refer to these reports collectively as the "GI Report."

The GI Report is an executive summary of the investigator's findings about how Walmart came to do business with London Luxury and a timeline of the subsequent series

of events. The Heypex transaction is also discussed. The GI Report references attached documents and communications that the investigators reviewed, including those produced by the witnesses they interviewed.  However, (except for bates-stamped documents 092, 305, 306, and 308) those ESI materials were not produced for in camera review.[2] Along the way, the GI Report (as revised and supplemented) contains the attorney-investigator's mental impressions, opinions, and conclusions.

Attached to the GI Report are summaries of interviews that were conducted with Walmart employees (including in-house attorney employees) with knowledge of the nitrile glove transactions. To be clear, the summaries were written by the attorney-investigators. To the Court's knowledge, the interviews were not recorded.

Bates-stamped document 356 are investigator notes from a Zoom videoconference with Marc Jason and Moshe Abeshera on December 14, 2021.  The stated purpose of that interview was to "determine[ ] where the gloves were manufactured and where the sample gloves were manufactured that were used for previously authorized testing."

London Luxury contends that the internal investigation by Global Investigations was not in anticipation of litigation, but rather "for a business purpose to avoid repeating the business mistakes that its businesspersons made, and it is clear would have been undertaken regardless of the prospect of litigation with London Luxury." Doc. 210, p. 13.

---

2. The Court's understanding would be that Walmart is not asserting *work-product* privilege over the ESI that Global Investigations identified during its investigation. And since those documents were not attached to the *in camera* production, the Court does not address in *this* Order whether they might be protected by the attorney-client privilege.

As far as the argument goes, the Court agrees that Walmart would have wanted to know how such a large transaction escaped the scrutiny of higher-level corporate executives. The Court is nevertheless convinced by its *in camera* review that the GI Report was prepared in anticipation of litigation and constitutes attorney work product protected Fed. R. Civ. Proc. 26(b)(3)(A).   The timeline shows that the investigation began when a $500 million[3] transaction was in the final stages of failing. The investigation was still on-going when London Luxury filed suit.  The investigation was led by Walmart's attorney-investigators. The GI Report is replete with attorney mental impressions, conclusions, and opinions.

Even if the investigation had roots in auditing business control failures, as London Luxury believes, the GI Report itself—the work-product at issue here—was very clearly prepared in anticipation of litigation.   Indeed, the GI Report was completed, revised, and further supplemented *after* litigation had commenced.   For these reasons, Walmart is not required to produce any of the documents listed on attached Exhibit 1.[4]

---

3. 72 million boxes of nitrile gloves at $7.40 per box = $532,800,000.

4. The Court does have some reservations about bates-stamped document 356 which contains interview notes and "takeaways" from a December 14, 2021 interview of London Luxury's executives, Marc Jason and Moshe Abeshera. To the extent this Zoom interview was recorded (which is not mentioned in the summary), Walmart must produce a copy of the recording. Fed. R. Civ. Proc. 26(b)(3)(C). And to the extent Walmart intends to impeach Mr. Jason's or Mr. Abeshera's testimony with prior inconsistent statements or admissions from this interview, Walmart must further explain to the Court why the summary should not be produced.

**IT IS SO ORDERED** on this 10th day of March, 2024.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE