IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**LONDON LUXURY, LLC**                                          **PLAINTIFF/COUNTER-DEFENDANT**

**V.**                              **CASE NO. 5:22-CV-5059**

**WALMART, INC.**                                                **DEFENDANT/COUNTER-PLAINTIFF**

### ORDER NUMBER FIVE REGARDING WALMART'S PRIVILEGE LOG

Before the Court are a series of related discovery disputes. In August of 2023 Walmart notified London Luxury that it was asserting privilege over a host of documents that were otherwise responsive to London Luxury's discovery requests. Walmart provided a privilege log identifying the documents it was withholding. London Luxury protested. After conferring, it was clear the parties were at an impasse. Per the Court's Case Management Order, the parties brought their dispute to the Court's attention in the form of letters and legal memorandum (which the Court will later mark as Court's exhibits). Walmart produced the disputed documents for the Court's *in camera* inspection. The Court has issued Four Orders partially resolving this dispute. See Docs. 398, 405, 408, and 413. This Fifth Order makes rulings on the remainder of withheld documents.

In this attorney-client privilege dispute, Walmart is the client who owns the privilege. Walmart is asserting the privilege over communications that its non-lawyer business executives had with other Walmart employees who are members of its in-house legal team. The communications at issue all relate in some form or fashion to the nitrile glove transactions that are at the heart of the parties' claims and defenses. For factual

1

context, the Court incorporates by reference and refers the reader to its Summary Judgment Opinion and Order filed on March 8th. Doc. 399.

This Order specifically addresses communications that Walmart's business employees had with its in-house legal team during negotiations of what the parties refer to as the "February Commitment Letter." After first reviewing the legal standard, the Court will discuss whether Walmart may withhold these communications as privileged.

Under Federal Rule of Evidence 501, when parties are litigating state law claims, state law defines the elements of attorney-client privilege. Arkansas Rule of Evidence 502 provides the basic rule in Arkansas:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

Further, when evaluating whether a client's employee's communications with an attorney should be shielded from production due to attorney-client privilege, the following five factors are considered:

> (1) whether the communication was made for the purpose of securing legal advice; (2) whether the employee making the communication did so at the direction of his corporate superior; (3) whether the superior made the request so that the corporation could secure legal advice; (4) whether the subject matter of the communication is within the scope of the employee's corporate duties; and (5) whether the communication is not disseminated

2

beyond those persons who, because of the corporate structure, need to know its contents.

*Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 609 (8th Cir. 1977).

Another guiding principle is particularly applicable in this case: "[T]he attorney-client privilege cannot at once be used as a shield and a sword." *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2nd Cir.), *cert. denied,* 112 S. Ct. 63 (1991). Because "[a] defendant may not use the privilege to prejudice his opponent's case . . . the privilege may implicitly be waived when [the] defendant asserts a claim that in fairness requires examination of protected communication." *Id.*

As a threshold matter, the Court would note that it has already effectively ruled on this issue regarding in-house attorney Vicki Vasser. Ms. Vasser served as a transactional advisor for the business team that was negotiating the February Commitment Letter. More recently, Walmart listed Ms. Vasser as a trial witness. For the reasons set forth in its First Order on the privilege log issues, the Court found that:

> It would be unfair for Walmart to have the benefit of calling Ms. Vasser on direct while withholding potential impeachment material from London Luxury. Walmart will not be permitted to at once use the attorney-client privilege as both a shield and a sword. *United States v. Bilzerian,* 926 F.2d at 1292. The Court finds that Walmart's waiver is a complete one, not a partial one.

Doc. 398, pp. 3-5. Separate from the express waiver resulting from Ms. Vasser testifying as a witness, the Court also found that Walmart had:

> [I]implicitly [ ] waived [the privilege by] assert[ing] a claim [or defense] that in fairness requires examination of protected communications." *Id*. As discussed more extensively in the Court's Summary Judgment Opinion, Ms. Vasser's role is inextricably baked into the center of the parties' contentions on their competing breach of contract claims and defenses.

3

Doc. 398, pp. 5-6, citing *United States v. Bilzerian,* 926 F.2d at 1292.  Consequently, the Court ordered Walmart to "immediately produce all Vasser documents that are still being withheld and that are dated prior to the filing of suit by London Luxury." Doc. 398, p. 5.[1] Consequently, the Court expects that Walmart would have already (by March 11th, or March 13th at the latest) produced Ms. Vasser's communications pertaining to the February Commitment Letter. The same was ordered for communications regarding in-house attorney Nicloe Chapman. Doc. 398, p. 8..

When Walmart submitted its privilege log documents for the Court's review, it broadly categorized the documents as being related to either the February Commitment Letter or its Internal Investigations.  Within the February Commitment Letter category, Walmart produced one set of documents labeled "Mixed Redacted and Withheld," a second set labeled "Redacted," and a third set of documents labeled "Withheld." Walmart did not further categorize its privilege log by in-house attorney name. Thus, the Court reviewed the entirety of all three sub-categories, including those pertaining to Vasser and Chapman.  For the reasons explained below, the Court finds that all communications in each sub-category must be produced (to the extent not already produced in compliance with Doc. 398).

The Court's Summary Judgment Opinion explained that:

The jury must determine whether Mr. Small had the authority to enter into the February 2021 Commitment Letter (which was fully executed on March 19) on behalf of Walmart. If Mr. Small had authority to sign, and assuming such authority

---

[1] At Walmart's request, the Court slightly parsed its ruling regarding certain of Ms. Vasser's substantive legal communications during the period of Walmart's internal investigation.  *See* Doc. 408.

was not negated by fraudulent conduct by London Luxury and/or knowledge by London Luxury that Mr. Small lacked such authority, then the February 2021 Commitment Letter would be construed as an enforceable contract.

Doc. 399, p. 37-38.

Walmart contends that Mr. Small did not have actual or apparent authority to sign the February Commitment letter. According to Walmart, Mr. Small was a relatively junior level executive: He was not an officer of the company, and he certainly did not have the corporate authority necessary to commit Walmart to a $500,000,000 non-cancelable purchase agreement. But the contemporaneous communications that Walmart seeks to withhold as privileged tell a different story about Mr. Small's role and authority during the pandemic when PPE products were very difficult to source. The communications provided to the Court suggest that higher-placed business executives, such as Shannon Allen, Staci Cochran, and Alex Hurd; as well as in-house attorney Vicki Vasser, were well aware of Mr. Small's negotiations with the London Luxury. Consider the following passages from the Court's Summary Judgment Opinion:

> After receiving Mr. Jason's email, Mr. Small attempted to secure the commitment letter the bank needed. On February 19, he emailed three people: Ms. Allen; Staci Cochran, who was Walmart's Senior Director of New Business Development; and Vicki Vasser-Jenkins, Walmart's Senior Counsel. *See id.* Mr. Small's email stated, "I finally think we know what [London Luxury's] bank wants, but it wasn't easy." *Id.* He then explained that Walmart could avoid issuing a whole year's worth of purchase orders at once by providing London Luxury's bank with a letter confirming the total purchase. He assured them: "This letter will allow [Walmart] to maintain flow starting next week if we can get it to [London Luxury] today. That will give them time to get the money from the bank, pack in their boxes and load containers to ship end of next week." *Id.*
>
> About 30 minutes after receiving this email from Mr. Small, Ms. Allen responded to Mr. Jason's email from the previous week. She apologized about ignoring his email and explained that she "thought [he] [was] already in communication with

>Garrett [Small]." (Doc. 259-1, p. 2). She then instructed Mr. Jason to communicate directly with Mr. Small from then on, as he was to be London Luxury's "main point of contact on this buy."
>
>\*   \*   \*
>
>At 3:50 p.m. on February 22 (i.e., after the lunchtime meeting), Mr. Jason sent an email to Mr. Small. The email contained language that Mr. Jason had crafted for Mr. Small to insert in a working draft of a "[b]inding commitment" letter that London Luxury could, in turn, present to its bank to secure financing for the large Walmart order. (Doc. 259-5, pp. 2–3). Mr. Jason suggested that the commitment letter state that Walmart was "hereby formally committing to purchase from London Luxury a minimum of 6,072,770 master cartons of nitrile examination gloves . . . on a <u>non-cancellable</u> and <u>irrevocable</u> basis for a minimum of a twelve (12) month period commencing on the date of first shipment of the Product . . . . [and] delivered on a monthly flow basis." *Id.* (emphasis in original).
>
>After receiving Mr. Jason's email, Mr. Small forwarded it in its entirety to Walmart attorney Ms. Vasser-Jenkins. *Id.* Several hours later, she responded to Mr. Small:
>
>>I am sorry I misunderstood that I was to revise the letter. I did not work on the original letter (although I provided feedback) and thought you or someone on your team was tweaking former draft for me to review from legal perspective. Happy to work on it and get something to you.

Doc. 399, pp. 16-18

By contending that Mr. Small did not have actual or apparent authority to sign the February Commitment Letter, Walmart has created a story-line fabric from which the attorney threads of yarn cannot be separated. Vicki Vassar, Nicole Chapman, and other in-house attorneys were de facto members of departmental business units overseeing the procurement of nitrile gloves from London Luxury.  The plan was to immediately resell most of them to Heypex.  From London Luxury's perspective, everyone at Walmart—including its in-house business attorneys—were more interested in closing a profitable B2B transaction—than they were in making sure Walmart's "main point of

6

contact" was cloaked with proper corporate authority. "[T]he attorney-client privilege cannot at once be used as a shield and a sword." *United States v. Bilzerian,* 926 F.2d at 1292.   Even if Walmart had not expressly waived the privilege, it "implicitly [ ] waived [the privilege by] assert[ing] a claim [or defense] that in fairness requires examination of protected communications." *Id*.

Accordingly, after reviewing all three subcategories of entries on the February Commitment Letter privilege log, the Court overrules Walmart's assertion of privilege. **By no later than Noon CST on March 19, 2024, Walmart must produce the documents listed on the attached Exhibits 1, 2, and 3, without redactions.** That said, just because the documents are discoverable, does not necessarily mean they are admissible in evidence.

In the days to come, the Court will file a listing of the parties letters and moving papers on all privilege log issues to preserve the parties positions for the benefit of the record.

**IT IS SO ORDERED** on this 19th day of March, 2024.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE