IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**LONDON LUXURY, LLC**                                    **PLAINTIFF/COUNTER-DEFENDANT**

V.                              CASE NO. 5:22-CV-5059

**WALMART, INC.**                                          **DEFENDANT/COUNTER-PLAINTIFF**

## ORDER

Before the Court is a discovery dispute that London Luxury brought to the Court's attention. The dispute, including each side's position, is set out in Exhibit 1 to this Order. See also Doc. 362-5. According to London Luxury's email to the Court dated September 14, 2023, the dispute arose because "Walmart inserted an incendiary bribery theory into this case yet is now refusing to produce its own key documents that will show its theory is baseless and litigation driven." London Luxury sought three categories of documents:

- First, documents that would show efforts by Walmart to report the supposed bribery or to enforce Walmart's rights leading up to Walmart's [May 2023 Counterclaim]. This evidence of Walmart's diligence, or lack thereof, in acting on the supposed bribery is directly relevant to the timeliness of Walmart's recission claim.

- Second, documentation of other instances of suspected bribery of Walmart employees, from the custodians with responsibility for addressing such suspected bribery, to show that the alleged misconduct does not constitute bribery and is not a material violation of Walmart's own anti-bribery provisions.

- Third, Walmart's compliance policies, procedures, controls, and practices that Walmart's compliance personnel utilize when determining whether a material violation of Walmart's ethics policies has occurred. Walmart's compliance documents will illuminate what Walmart has historically considered to be a material violation of its boilerplate contracts and other policies.

1

Walmart's position, distilled to its essence, was that it had produced all non-privileged documents pertaining to its knowledge of the alleged bribery of Mr. Small, and that the nature and scope of the remaining requests were either not relevant or overly broad.

A lot of water has flowed under the bridge since September when this dispute was first raised.  For example, the Court has issued a Summary Judgment Opinion that narrowed the issues remaining for trial. *See* Doc. 399. The Summary Judgment Opinion is incorporated here by reference because it lays out certain undisputed facts related to the timeline of the February 2021 Commitment Letter and Mr. Small's interactions with Mr. Jason on that timeline (e.g. Doc. 399, pp.16-21).

Among other rulings, the Court refused to dismiss Walmart's rescission claim on Summary Judgment. Doc. 399, pp. 49-52.  There the Court laid out the timeline of Mr. Small's efforts to fabricate the June commitment letter and when Walmart learned about it. The Court concluded that "no reasonable jury could find that the rescission counterclaim was untimely asserted." Id. at p. 52.

Finally, the Court has also issued five rulings on a related dispute where London Luxury challenged certain documents on Walmart's privilege log.  Among other things, London Luxury objected to the withholding of employee communications with in-house counsel and to the withholding of Walmart's internal investigative communications and related documents. The Court resolved those objections—sustaining most of Walmart's assertions of privilege over the investigative documents, but overruling Walmart's

2

assertion of privilege over communications between business employees and in-house counsel when discussing the transactional aspects of the nitrile gloves deal. Those Orders had the effect of requiring Walmart to produce numerous communications between Mr. Small and in-house attorney Vicki Vasser (and Nicole Chapman), that had previously been redacted or withheld.   See Docs. 398, 405, 408, 413, and 414.

More recently, to get to the nub of what might remain outstanding, the Court required Walmart to represent whether it had produced all non-privileged documents[1] in its possession or control that would evidence any improper business relationship between Garrett Small, Marc Jason, and London Luxury.   Walmart's response is attached here as Exhibit 2.   Although verbose and filled with lawyerly qualifications, the Court understood Walmart's answer as a representation that all such documents have now been provided to London Luxury.   London Luxury disagrees and contends that hundreds of Garrett Small and/or Vicki Vasser documents have still not been produced. See attached Exhibit 3.

The Court's review of documents was limited to those submitted for *in camera* review at the time, but its orders were not limited to privilege log entries. The Court had no way of knowing anything about documents not submitted for its privilege review.[2]  That

---

1. The Court did not require Walmart to address any documents where the Court had already sustained Walmart's assertion of privilege.

2. Although, when ruling on the internal investigation issue, the Court did put Walmart on notice of "[t]he Court's understanding [ ] that Walmart is not asserting *work-product* privilege over the ESI that Global Investigations identified during its investigation. And since those documents were not attached to the *in camera* production, the Court does not address in *this* Order whether they might be protected by the attorney-client privilege."

was the whole point of yesterday's questions to Walmart: to confirm that *all* Small documents presently *known to exist* have been produced to London Luxury. Walmart's response, in turn, would inform the Court's ruling on liminal issue 361.10. To London Luxury's point, the Court's inquiry was clearly not limited to the documents previously submitted for *in camera* review.

To be crystal clear, the Court interprets Walmart's responses to be that Walmart has produced all Small documents related the glove transactions generally—and the bribery issue more specifically—which are presently known to exist based on the ESI searches that the parties previously agreed upon. The only exception being documents the Court expressly identified and sustained as being privileged. If the Court's interpretation is wrong—as London Luxury seems to believe—Walmart's counsel had best explain that to the Court immediately (in plain words this time), or risk being personally sanctioned along with their client.

The same premise applies to Vasser (and Chapman) documents. The first privilege log order (Doc. 398) required Walmart to "immediately produce all Vasser documents that are still being withheld . . ." Doc. 398, p. 5. This would have included all communications between Small and Vasser (except for those deemed by the Court as being attendant to Walmart's internal investigation that began in October 2021). If Walmart knows of any such Vasser (and/or Chapman) documents to exist that have not yet been produced, it had best explain that immediately too.

---

Doc. 405, p. 5, n. 2.

For now anyway, the Court believes its understanding of Walmart's response is correct, and it has no good reason to believe that Walmart or its attorneys are misleading the Court.  The Court therefore finds that no non-privileged documents remain to be produced in response to the first category of disputed documents noted above.

In the second and third categories, London Luxury sought productions of all Walmart anti-bribery policies and procedures that would allow London Luxury to contextualize and distinguish between non-material acceptable bribes *vis-a-vis* a more serious variety.   London Luxury then wanted those in charge of such matters to produce all documents in their possession to show how and where the line is drawn by Walmart as a practical matter.   The Court sustains Walmart's objections to the production of such documents.

Discovery requests must be relevant to a claim or defense and proportional to the needs of the case. Fed. R. Civ. Proc. 26.  Walmart raised the bribery issue as an aspect of both its claims and defenses, and the Court has thusly required that all documents pertaining to an improper business relationship between Small, Jason, and London Luxury be produced. And to the extent the parties' agreement incorporates an anti-bribery policy, Walmart must produce the policy (and presumably it already has).

That said, Walmart's history of investigating *other* bribery or gratuity claims—and its findings and any disciplinary actions that may or may not have been meted out in other instances—are not relevant to any claim or defense in *this* case.  Those matters might be relevant if, for example, Garrett Small were suing Walmart for wrongful termination,

but that is not the case here. The requests in categories two and three are also overly vague and overly broad in substantive and temporal scope. To the extent the responding party knew where to begin the search, they surely wouldn't know where to end it. More to the point, when weighing Rule 26's proportionality factors, the Court finds they weigh heavily against the requirement that Walmart be required to produce them. Walmart's objections to the requests summarized in categories two and three above are sustained.

**IT IS SO ORDERED** on this 22nd day of March, 2024.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE